BERGER MONTAGUE PC
Benjamin Galdston (SBN 211114)
Email: bgaldston@bm.net
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
Tel:   (619) 489-0300

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATIAS LEE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **(1) BREACH OF CONTRACT;** <br> **(2) RESTITUTION BASED ON QUASI CONTRACT;** <br> **(3) CONVERSION; and** <br> **(4) UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200,** *et seq.* <br><br> JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

Page(s)

I.  NATURE OF THE ACTION ............................................................................... 1

II. PARTIES .............................................................................................................. 4

    A.  Plaintiff.................................................................................................... 4

    B.  Defendant ................................................................................................ 4

III. JURISDICTION AND VENUE ........................................................................ 5

IV. FACTUAL ALLEGATIONS ............................................................................ 5

V.  CLASS ACTION ALLEGATIONS .................................................................. 9

COUNT I
    Breach of Contract ........................................................................................... 12

COUNT II
    Restitution Based On Quasi-Contract............................................................... 13

COUNT III
    Conversion ........................................................................................................ 14

COUNT IV
    Unfair Conduct in Violation of Unfair Competition Law,
    Cal. Bus. & Prof. Code § 17200, *et seq.* ......................................................... 15

VI. PRAYER FOR RELIEF .................................................................................. 16

VII. DEMAND FOR JURY TRIAL ...................................................................... 17

Plaintiff Matias Lee ("Plaintiff" or "Lee"), individually and on behalf of all other similarly situated students (collectively, "Plaintiffs" or the "Class" as defined below), brings this class action complaint against the Regents of the University of California ("Defendant," the "University," or "UC"). Plaintiff makes the following allegations upon personal knowledge as to his own acts and upon information and belief and his attorneys' investigation as to all other matters.

I. **NATURE OF THE ACTION**

1. This is a class action brought on behalf of Plaintiff and other similarly situated UC students who paid tuition, fees and other costs for in-person education for the Spring 2020 academic term and thereafter, and who (i) did not receive the promised and bargained-for educational and other services and (ii) have not been refunded a prorated portion of their tuition and fees after UC ceased providing such services in March 2020 due to Coronavirus Disease 2019 ("COVID-19").

2. Specifically, as a result of Defendant's wrongful acts and unfair business practices alleged herein, Plaintiff and the proposed Class (i) have not received any refund or reimbursement for the unused services for which they paid fees and/or (ii) did not receive any refund or reimbursement for the decreased value of the education they received from UC when their classes transitioned from in-person instruction at the University's campus facilities to a remote, online learning format.

3. UC is a public university system consisting of ten campuses in California: UC Berkeley, UC Davis, UC Irvine, UCLA, UC Merced, UC Riverside, UC San Diego, UC San Francisco, UC Santa Barbara, and UC Santa Cruz.

4. In 2019, UC enrolled more than 280,000 undergraduate and graduate students.

5. UC has a $83 billion endowment and pension fund.

6. The estimated annual UC San Diego resident undergraduate tuition is

$16,455.42. This amount covers three academic terms—Fall, Winter and Spring. Each term costs approximately $5,485.14 in total. Of that amount, $3,814.00 is categorized as tuition and the remainder is categorized as various fees.[1]

7. In response to COVID-19, on or around March 9, 2020, UC cancelled all in-person classes and closed campuses, including at UC San Diego.

8. Plaintiff's experience is typical of other Class members. UC has not provided any in-person classes or full use of its campus and other facilities since March 9, 2020. Instead, UC has offered less valuable online classes instead of the bargained-for in-person instruction and on-campus experience. Consequently, Defendant has not provided the education, services, facilities, technology, access or opportunities for which Plaintiff and the Class paid. Moreover, Defendant has failed to compensate Plaintiff and the Class for the diminished value and damages they have suffered as a result of Defendant's actions. As one commentator put it, "*[u]niversities are still in a period of consensual hallucination* with each saying, 'We're going to maintain these prices for what has become, overnight, a *dramatically less compelling product offering*.'"[2]

9. Over **44,000 people** have signed an online petition at www.change.org requesting that UC provide refunds to students to compensate them for the harm suffered as a result of the campus closures, failure to provide in-person instruction and other benefits promised by UC and paid for by Plaintiff and the Class.[3]

10. UC also has received over ***$100 million*** in government funding through

---

[1] https://students.ucsd.edu/finances/fees/registration/2019-20/index.html (site last visited May 11, 2020).

[2] James D. Walsh, "The Coming Disruption," New York Magazine, May 11, 2020, available at https://nymag.com/intelligencer/2020/05/scott-galloway-future-of-college.html?utm_source=fb (site last visited May 12, 2020).

[3] https://www.change.org/p/regents-of-the-university-of-california-partially-refund-uc-student-s-tuition-for-spring-quarter (site last visited May 11, 2020).

the Coronavirus Aid, Relief, and Economic Security (CARES) Act, half of which is federally mandated to go toward students who are in need of emergency financial assistance. As a result of Defendant's actions, students who do not meet academic progress requirements for the Spring term, and international and undocumented students, will be denied access to these funds.

11. UC San Diego alone has received a total CARES Act allocation of $34,889,769.00.

12. Despite receiving this influx of federal funds, Defendant refuses to refund or reimburse Plaintiff and similarly situated UC students the fees they paid for the education and other services they are not being provided, including fees for student, event and recreation centers that are now closed and for sports that are no longer taking place.

13. The University also refuses to refund or reimburse Plaintiff and similarly situated students for tuition paid for classes that UC is currently providing to them that are substantially less valuable than the classes promised.

14. Plaintiff and other Class members have lost the benefits of the education, services, and other experiences that the University promised. Despite failing to fulfill their obligations, Defendant is currently unlawfully retaining and refusing to fully or partially refund Plaintiff's Spring 2020 term tuition and fees, despite the dramatically lower quality and less valuable education now being provided, and despite the cessation of many of the services for which Plaintiff was charged a specific fee.

15. Essentially, students have paid Defendant for access to buildings they can no longer enter and activities that are not available. UC is thus profiting from COVID-19 while further burdening students and their families, many of whom have borne the brunt of the pandemic, themselves been laid off, or who are ill or suffering

from financial setbacks. The result is an enormous windfall to Defendant. Both contract and equity demand that Defendant disgorge these ill-gotten funds.

16. Plaintiff and similarly situated UC students seek disgorgement of their payments for unused services and a refund of their tuition for substandard classes. Plaintiff brings this class action for injunctive, declaratory, and equitable relief, and any other available remedies, resulting from Defendant's illegal, inequitable, and unfair retention of the funds paid by Plaintiff and the other students in the proposed Class.

17. Specifically, this lawsuit seeks disgorgement and monetary damages in the amount of prorated, unused amounts of tuition and fees that Plaintiff and the other Class members have paid to the University, which benefits Defendant is not providing, including the difference in value between the live in-person classes and the on-campus experience for which students enrolled and paid compared to the online classes that UC has been providing instead since mid-March 2020.

## II. PARTIES

### A. Plaintiff

18. Plaintiff is a resident of San Diego, California. Mr. Lee is an undergraduate student studying mechanical engineering at UC San Diego. He is scheduled to receive his bachelor's degree in May 2020.

### B. Defendant

19. The Regents of the University of California are empowered by Article IX, Section 9 of the California Constitution. UC supervises all ten universities within the University of California system.

20. The University of California resides in Alameda County, California, with its principal place of business at 1111 Franklin Street, Oakland, California 94607.

21. UC can sue and be sued and has the power to take and hold property in its own name. Plaintiff does not seek to recover any taxpayer funds, or funds from the State's coffers. Rather, Plaintiff seeks equitable relief, including disgorgement of the prorated, unused amounts of fees (as further described herein) that Plaintiff and the other Class members paid, but for which they (or the students on behalf of whom they paid) will not be provided the benefit thereof.

### III. JURISDICTION AND VENUE

22. This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interests and costs, and because at least one member of the Class defined below is a citizen of a state other than California.

23. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this judicial District.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this District and is a resident of the state in which the District is located.

### IV. FACTUAL ALLEGATIONS

**A.   The UC System**

25. UC is one of the nation's most prestigious public university systems.

26. UC charges students for both tuition and fees on a per-term basis, with some UC schools maintaining academic calendars based on quarters and others based on trimesters.

27. UC San Diego primarily operates on a quarterly academic calendar with Fall, Winter, Spring and Summer terms.

28. Students enrolled in UC San Diego's undergraduate programs are

charged at least $5,485.14 in tuition and fees for each term, including the Spring term. Of that amount, $3,814.00 is characterized as tuition. The remainder is characterized as various fees. Each fee has a specific purpose, as described on the UC San Diego website.[4]

### B. The COVID-19 Pandemic

29. In late 2019, the Chinese government confirmed several cases of a novel illness causing pneumonia-like symptoms. The illness was subsequently identified as COVID-19. By January 2020, the U.S. government confirmed several domestic cases.

30. COVID-19 spread rapidly throughout the world in the beginning months of 2020. Millions have now been infected. The World Health Organization characterized COVID-19 as a "public health emergency of international concern" in late January and as a pandemic on March 11.

31. Because the virus that causes COVID-19 is highly infectious, and because the illness can be severe or fatal, federal, state, and local governments in the United States have implemented travel restrictions and shelter-in-place or stay-at-home orders. California issued its stay-at-home order on March 19, 2020. As of the filing of this Complaint, the vast majority of states have ordered their citizens to shelter in place for protection of their personal health and safety and that of the broader public.

### C. UC Continues to Assess Fees Amidst the Pandemic

32. Plaintiff registered for in-person undergraduate classes for the Spring term based on a course catalog and other information provided by Defendant.

33. Recognizing and accepting Plaintiff's registration, Defendant charged

---

[4] https://students.ucsd.edu/finances/fees/registration/2019-20/index.html (site last visited May 11, 2020).

Plaintiff tuition and fees for the Spring term totaling $5,534.58, including among other things a $30.00 "Course Fee" for enrollment in the Mechanical and Aerospace Engineering ("MAE") Upper Division lab instruction in "Experimental Techniques." However, the University no longer provides Plaintiff and other Class members with lab instruction, as all campus facilities are closed.

34. In addition to tuition for the courses in which he had registered, Plaintiff also was charged various fees for the Spring term, many of which were for services that the University likewise no longer provides. For example, Plaintiff paid a "UC Student Services Fee" ($376.00) for co-curricular programs and activities that are no longer offered. Similarly, Plaintiff paid UC San Diego-specific fees for benefits, services and activities that UC San Diego no longer provides in whole or part as follows: "Campus Activity Fee" ($73.06); "University Center Fee" ($101.46); "Recreation Facility Fee" ($117.00, consisting of $95.00 for RIMAC Facility and $22.00 for Canyonview Facility); "ICA Student Activity Fee" ($259.04); "Health Insurance" ($680.00); and "Student Transportation Fee" ($64.58) (even though student transportation is now inoperative). Other UC campuses likewise charge similar fees for benefits, services and activities that those schools no longer fully provide.

35. Plaintiff has not attended any in-person classes since March 16, 2020. Instead, all his classes have been moved online.

36. Plaintiff has neither received nor been offered any refund or reimbursement for the tuition, fees or other costs that he was charged for the Spring 2020 term.

37. Despite Defendant's large endowment and receipt of $100 million of aid through the CARES Act, UC has decided to pass the financial burden imposed by the COVID-19 crisis onto students like Plaintiff and the Class, citing its expenses

and the "need to maintain campus infrastructure."[5]

38. As a result of UC school closures, Defendant has not delivered the educational services, facilities, programs, and opportunities for which Plaintiff and students in the proposed Class contracted and paid. Plaintiff and the proposed Class are therefore entitled to a full refund of that portion of the fees and tuition for the latter half of the Spring 2020 quarter and subsequent terms that pertain to educational and other services Defendant did not provide, or which Defendant provided in a severely diminished manner.

39. The remote, online learning "classes" offered to UC students since March deprive students of in-person learning from their peers and school faculty. The move to these remote classes also deprives students of access to the facilities, materials, and opportunities only offered on UC's physical (as opposed to virtual) campus.

40. The online classes that Defendant now offers are not equivalent to the in-person, campus experience that Plaintiff and other UC students chose for their university education. The tuition and fees UC charged were predicated on access to and constant interaction with and feedback from peers, mentors, professors and guest lecturers; access to technology, libraries, and laboratories; spectator sports and athletic programs; student government and health services; and extracurricular groups and learning, among other things.

41. Universities and colleges that offer both in-person and online education generally charge less for online classes than for in-person classes.

42. In instances where online degree programs are similarly priced to in-

---

[5] https://students.ucsd.edu/finances/fees/registration/2019-20/index.html (site last visited May 8, 2020).

person degree alternatives from the same academic institution, the online offering includes a variety of additional goods and services, such as in-person internship and practicum opportunities, additional asynchronous instruction (i.e., instruction not offered through a live video channel), and small class sizes to ensure the quality of the online synchronous classes.

43. UC provides none of the additional support or services that typically are included with classes that are intended to be conducted online from inception. Indeed, class sizes remained the same; yet, no additional practical or in-person services were offered. Even professors' "office hours" were transformed into a chat room format, more resembling email than an actual human interaction.

44. Further, many of the online courses Plaintiff took after the closing were not even offered in real-time. Instead the "instruction" consisted of pre-recorded videos.

45. Through this lawsuit, Plaintiff seeks—for himself and the Class—compensation for the harms suffered as a result of Defendant's misconduct.

## V. CLASS ACTION ALLEGATIONS

46. Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and/or (c)(4), Plaintiff brings this action on behalf of himself and the following Class:

> All persons who paid tuition, fees, and/or other costs to the University of California for 1) in-person classes for the Spring 2020 term or a subsequent term and 2) who did not receive the benefits for which they paid.

47. The following persons and entities are excluded from the Class: Defendant and its officers, directors, employees, subsidiaries, and affiliates; all judges assigned to this case and any members of their immediate families; and the parties' counsel in this litigation. Plaintiff reserves the right to modify, change, or expand the class definition, including by proposing additional subclasses, based

48. A class action is a superior means to ensure the fair and efficient adjudication of this case. The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against Defendant. Moreover, individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and the Court itself. By contrast, by proceeding as a class action, the claims at issue can be adjudicated efficiently through economies of scale.

49. **Numerosity.** In accordance with Fed. R. Civ. P. 23(a)(1), the members of the proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Although the precise number of Class members is unknown presently to Plaintiff, the Class is presumed to number more than 200,000 people and is easily ascertainable through enrollment and financial records maintained by Defendant.

50. **Commonality and Predominance.** In accordance with Fed. R. Civ. P 23(a)(1) and (b)(3), this action involves questions of law and fact common to the Class that predominate over any individual questions specific to any Class member. These include:

   a. whether Defendant accepted money from the Class;

   b. whether Defendant retained money from the Class for services it did not render, or only partially rendered;

   c. whether Defendant entered into a contract with the Class;

   d. whether Defendant breached its contract with the Class;

   e. whether Defendant's failure to refund tuition and fees was appropriate;

   f. whether Defendant benefited from the money it accepted from the Class;

   g. whether the educational and other services Defendant provided to the Class were commensurate with their price;

   h. whether UC's acts and practices described herein constitute unfair conduct in violation of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200, *et seq.*;

   i. whether certification of the Class is appropriate under Fed. R. Civ. P. 23;

   j. whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

   k. the amount and nature of relief to be awarded to Plaintiff and the other Class members.

51. **Typicality.** Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members each paid tuition, fees and/or other costs to UC but were not provided their bargained-for and promised benefits. Each suffered damages in the form of their lost tuition, fees, and other monies paid to Defendant, and the claims all arise from the same UC practices and course of conduct. There are no defenses available that are unique to the Plaintiff.

52. **Adequacy of Representation.** In accordance with Fed. R. Civ. P 23(a)(4), Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other proposed Class members. Moreover, Plaintiff has retained counsel competent and experienced in complex class action litigation, and he intends to prosecute this action vigorously on behalf of his fellow Class members. Plaintiff has no interests that are antagonistic to those of the Class and he will fairly and adequately protect the proposed Class' rights along with counsel.

# COUNT I

## Breach of Contract

53. Plaintiff repeats and re-alleges the allegations in the preceding paragraphs as if fully alleged herein.

54. Plaintiff brings this claim individually and on behalf of the other members of the Class.

55. Plaintiff and the other members of the Class entered into binding contracts with the Defendant which provided that Plaintiff and the other members of the Class would pay tuition and fees in exchange for on-campus, in-person educational, social, athletic, and other experiences.

56. As part of its contracts with Plaintiff and members of the proposed Class and in exchange for adequate consideration that Plaintiff and members of the proposed Class provided, Defendant promised on-campus, in-person educational, social, athletic, and other experiences.

57. Defendant failed to provide the services that it was obligated to provide under its contracts with Plaintiff and the proposed Class. Defendant has retained tuition, fees and other payments paid by Plaintiff and the other Class members without providing them the promised benefits, instead providing those benefits for only a portion of the academic term.

58. By contrast, Plaintiff and the other members of the Class fulfilled their end of the bargain when they paid the monies due and owing for their full tuition and fees.

59. The tuition and fees that Plaintiff and the proposed Class paid were intended to cover in-person educational and extra-curricular services from January through May 2020 and subsequent academic terms. Defendant, however, failed to provide the services due under the contracts for that entire time period, yet has

improperly retained the funds Plaintiff and the proposed Class paid.

60. Plaintiff and members of the Class have suffered damages as a direct and proximate result of Defendant's breach, including being deprived of the education, experience and services that they were promised and expected to obtain, and for which they have paid. They are entitled to damages including but not limited to prorated reimbursement of the tuition, fees and other expenses that were collected by Defendant for services that Defendant failed to deliver fully.

61. Defendant's performance under the contracts is not excused because of COVID-19. Even if performance was excused or impossible, UC would nevertheless be required to return the funds received for services and/or goods that it did not provide.

## COUNT II

### Restitution Based On Quasi-Contract

62. Plaintiff repeats and re-alleges the allegations in the preceding paragraphs as if fully alleged herein.

63. Plaintiff brings this claim individually and on behalf of the other members of the Class in the alternative to the breach of contract claim brought in Count I.

64. Plaintiff and other members of the proposed Class conferred a benefit or enrichment on UC by paying tuition and required fees to UC which were beneficial to UC, at the expense of Plaintiff and the other members of the Class.

65. Plaintiff and the other members of the Class paid tuition and required fees and did not receive the full benefit of their bargain from UC, thus resulting in their impoverishment.

66. UC has retained the benefit paid by Plaintiff and the Class despite its failure to provide the services for which the benefit was paid.

67. There is no justification or cause for UC's failure to return the portion of the tuition and fees that UC has unjustifiably kept for itself even though it failed to complete the services for which Plaintiff provided the funds to UC.

68. Accordingly, UC has been unjustly enriched and should pay as restitution a prorated portion of Class members' unused tuition, fees and other costs paid for the Spring 2020 term and subsequent terms.

## COUNT III

### Conversion

69. Plaintiff repeats and re-alleges the allegations in the preceding paragraphs as if fully alleged herein.

70. Plaintiff brings this claim individually and on behalf of the Class.

71. Plaintiff and the other members of the Class have a right to the in-person educational and extra-curricular services that they were supposed to be provided in exchange for their payments to UC.

72. Defendant intentionally interfered with the rights of Plaintiff and the other members of the proposed Class when it retained fees intended to pay for on-campus classes, facilities, and activities, while moving all classes to an online, remote learning format and discontinuing services and access to facilities for which Plaintiff and the members of the proposed Class had paid.

73. Defendant deprived the Plaintiff and the other members of the Class of their fees or of the right to the services for which their fees were intended to be used.

74. Class members demanded the return of the prorated, unused fees for the remainder of the Spring 2020 term and subsequent terms.

75. Defendant's retention of the fees paid by Plaintiff and the other members of the Class without providing the services for which they paid deprived Plaintiff and the other members of the Class of the benefits for which the fees were

paid. This interference with the services for which Plaintiff and the other members of the Class paid damaged Plaintiff and the other members of the Class in that they paid fees for services that were not and will not be provided.

76. Plaintiff and the other members of the Class are entitled to the return of the prorated unused portion of the fees paid through the end of the academic term.

## COUNT IV

### Unfair Conduct in Violation of the Unfair Competition Law
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

77. Plaintiff re-alleges each of the allegations in the preceding paragraphs as if fully alleged herein.

78. UC's conduct is unfair in violation of the UCL because it violates California's legislatively declared public policy, as set out in the California Education Code, including in the Donahoe Higher Education Act, against retention by educational facilities of excess sums from students, and maintaining college affordability. It also breaches UC's agreements with its students.

79. UC's conduct also is unfair, in violation of the UCL, because UC acted in an unethical, unscrupulous, tortious, oppressive, and substantially injurious manner, including by:

    a. Assessing fees for services students could not safely use or were barred from using;

    b. Refusing to refund fees to students who could not reasonably or responsibly avail themselves of the services the fees were paid for; and

    c. Failing to abide by its promises to students with respect to the education the students would receive.

80. The gravity of the harm resulting from UC's conduct outweighs any potential utility of this conduct. The practice of charging fees while students could

not and should not use the services the fees were intended for harms the public at large and is part of a common and uniform course of wrongful conduct.

81. The harm from UC's conduct was not reasonably avoidable by students like Plaintiff. During the COVID-19 pandemic, UC uniformly assessed and declined to refund the relevant fees.

82. In lieu of UC's practices described in this Complaint, there are reasonably available alternatives that would further its legitimate interests, such as suspending fees and reducing staffing during the period of shutdown, and refunding fees to students who were unable, through no fault of their own, to use and enjoy the services the fees are intended to pay for.

83. Plaintiff suffered injury in fact, including lost money or property, as a direct and proximate result of UC's unfair conduct set forth above. But for that conduct, Plaintiff would not have been charged fees during the period he was unable to be on campus and use the relevant services.

84. Plaintiff therefore seeks such orders or judgments as may be necessary to enjoin UC from continuing its unfair practices, to declare those practices unlawful and relieve Plaintiff and Class members of their obligations to UC during the COVID-19 pandemic, and to restore to Plaintiff and Class members all moneys UC acquired through its prohibited acts and practices, including restitution as provided for under the UCL, in addition to reasonable attorneys' fees and costs as permitted by law.

## VI. PRAYER FOR RELIEF

85. Plaintiff, individually and on behalf of the members of the Class, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

a. Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing the undersigned counsel as Class Counsel;

b. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

c. Declaring that Defendant wrongfully kept the monies paid by the Class;

d. Awarding injunctive relief and restitution as permitted by law or equity;

e. Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

f. Awarding pre- and post-judgment interest on any amounts awarded; and

g. Awarding such other and further relief as the Court deems just and proper.

## VII. **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure on all causes of action so triable.

Dated: May 12, 2020

Respectfully submitted,

BERGER MONTAGUE PC

*/s/ Benjamin Galdston*
Benjamin Galdston (SBN 211114)
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
Tel: (619) 489-0300
Email: bgaldston@bm.net

*Attorneys for Plaintiff and the Class*

17
CLASS ACTION COMPLAINT